UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                        :

Ifedoo Noble ENIGWE,                     :           NOT FOR PUBLICATION
                        :

           *Plaintiff,*          :           MEMORANDUM AND ORDER
*v.*                              :           03-CV-854 (CBA)
                        :

Michael ZENK, Warden of MDC,     :
individually and as an official of    :
the Federal Bureau of Prisons;     :
Kathleen HAWK-SAWYER,  (former)  :
Director, Federal Bureau of Prisons, :
individually and as an official;     :
Jose MIELES, Counselor at MDC,   :
individually and as an official of    :
the Federal Bureau of Prisons,     :
                        :

          *Defendants.*        :
-----------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE

      Pro se plaintiff Ifedoo Noble Enigwe, a prisoner at the Federal Correctional Institution at

Elkton, in Lisbon, Ohio ("FCI Elkton") commenced this civil rights action in which he alleges

that during 59 day period in which he was detained at the Metropolitan Detention Center

("MDC"), in  Brooklyn, New York, he was exposed to dangerous levels of environmental

tobacco smoke ("ETS") in violation of his Eighth Amendment rights.  He also alleges that he

continues to be exposed to unreasonable levels of ETS at FCI Elkton, where he is currently

incarcerated.  Joined as defendants are Michael Zenk, Warden of MDC; Kathleen Hawk-Sawyer,

(former) Director, Federal Bureau of Prisons; and Jose Mieles, Counselor at MDC.  Plaintiff

seeks punitive and compensatory damages in the amount of $500,000 from each defendant.

      Defendants have moved for summary judgment, pursuant to Federal Rule of Civil

Procedure 56(c).  For the reasons stated below, the motion is granted with respect to Enigwe's

1

claims against the defendants in their official capacities and with respect to his claims relating to

FCI Elkton, but is denied at this stage with respect to his claims regarding the MDC Brooklyn.

BACKGROUND

Enigwe was detained at MDC for approximately two months between November 18,

2002, and January 16, 2003. He alleges that he was exposed to harmful amounts of ETS during

that time. Specifically, he contends that inmates routinely smoked inside the unit despite the

prohibition on doing so, that his cell-mate and others chain-smoked within his cell, and that

cigarette smoke constantly entered his cell through the heating vents. In his complaint, Enigwe

contends that he currently suffers from dizziness, uncontrollable coughing, frequent lack of

appetite, runny eyes, and high blood pressure as a result of the exposure. He has also allegedly

suffered from emotional distress in the form of daily anxiety as a result of the exposure. Finally,

Enigwe alleges that he continues to be exposed to ETS in his present location in FCI Elkton, as

inmates smoke openly in the living quarters in violation of the facilities' rules.

DISCUSSION

I.      Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986);

Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve

disputed issues of fact but to determine whether there is a genuine issue to be tried. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Vital v. Interfaith Med. Ctr., 168

F.3d 615, 622 (2d Cir. 1999). The moving party bears the burden of establishing the absence of a genuine issue of material fact for trial.  Baisch v. Gallina, 346 F.3d 366, 371 (2d Cir. 2003).

The Court is required to view the evidence in the light most favorable to the nonmoving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and must construe the pro se plaintiff's claims liberally in deciding the motion for summary judgment, see Sawyer v. American Fed'n of Gov't Employees, AFL-CIO, 180 F.3d 31, 36 (2d Cir. 1999) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).  Nevertheless, the nonmoving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact.").  No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249–50 (citations omitted).

Under the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, summary judgment may be granted in a pro se case when (1) the plaintiff has received adequate notice that failure to respond may result in dismissal of the case, and (2) the court determines that the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law.  Civ. R. 56.2; Fed. R. Civ. P. 56(e); see Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).  In this case, Enigwe received notice informing him of the nature and consequences of summary judgment, as required by Vital, 168 F.3d at 620–21.  Although Enigwe did not file a Rule 56.1

statement, he did submit a memorandum which provided information contradicting several of the defendants' assertions.

II.     Sovereign Immunity

The defendants contend that the Court must dismiss Enigwe's claims to the extent that they are asserted against the defendants in their official capacities. In response, Enigwe has asked the Court to substitute the United States for the defendants in their official capacity. It is clear, however, that the claims cannot proceed against either the United States or the defendants in their official capacities.

A lawsuit against a federal employee acting in his or her official capacity is in essence an action against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The United States, however, "is immune from suit save as it consents to be sued." United States v. Testan, 424 U.S. 392, 399 (1976) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)); Monti v. United States, 223 F.3d 76, 78 (2000) ("The doctrine of sovereign immunity prevents suits against the United States unless the United States has waived the immunity."). Although the United States has waived sovereign immunity with respect to certain kinds of claims, see, e.g., Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.*, it has not waived immunity with respect to the constitutional claims Enigwe asserts.[1] Thus, Enigwe may not pursue these claims against the defendants in their official capacities, or against the United

---

[1] In his reply brief, Enigwe alludes to a claim under the Federal Tort Claims Act ("FTCA"). However, Enigwe's claims may not be brought pursuant to the FTCA because they rest on violations of Enigwe's constitutional rights. See King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999) ("Congress has not waived the government's sovereign immunity, for example under the Federal Tort Claims Act . . . , from lawsuits based on constitutional claims." (citations omitted)).

States.

Enigwe may, however, pursue his claims against the defendants in their personal capacities pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Bivens authorizes suits for monetary damages against federal officials for constitutional violations, such as the Eighth Amendment violations that Enigwe asserts. Such suits are asserted against the defendants in their personal capacities and not against the defendants in their official capacities or against the United States. See FDIC v. Meyer, 510 U.S. 471, 485 (1994) ("[W]e implied a cause of action against federal officials in Bivens in part *because* a direct action against the Government was not available." (emphasis in original)); Armstrong v. Sears, 33 F.3d 182, 185 (2d Cir. 1994) (noting Bivens allows suit against federal officials in personal but not official capacities).

The caption of Enigwe's complaint asserts that it presents claims against each defendant "individually and as an official." (Compl. 1, January 29, 2003.) The claims may not proceed against the defendants in their official capacities, or against the United States, but may proceed against the defendants personally. The Court therefore construes Enigwe's complaint as presenting a Bivens action against the named defendants in their personal capacities.

The Court notes that Enigwe has not made any allegation that defendant Hawk-Sawyer, the former Director of the Federal Bureau of Prisons, was personally involved in the alleged deprivation of his constitutional rights. The only paragraphs of Enigwe's complaint which mention Hawk-Sawyer state her title and address venue. (See Am. Compl. ¶¶ 3, 4.) Moreover, Enigwe's complaint does not allege that prison authorities within the Federal Bureau of Prisons had received a significant number of complaints regarding smoking at either facility, or state any

other fact from which this Court could infer that Hawk-Sawyer had any personal involvement in the alleged Eighth Amendment violation. Therefore, the Court concludes that Hawk-Sawyer must be dismissed as a defendant from this case.

III.     Exhaustion of Administrative Remedies

The defendants contend that Enigwe's claims should be dismissed because he failed to exhaust the administrative remedies that were available to him. Enigwe acknowledges that he failed to exhaust those remedies and argues that he should be excused from exhaustion because he attempted to pursue those remedies on several occasions but was consistently rebuffed or ignored. (Am. Comp. ¶¶ 9, 10.)

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is an affirmative defense rather than a jurisdictional limitation. Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004); see also Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003) (holding exhaustion not jurisdictional). Thus, the Second Circuit has held that a plaintiff inmate may pursue even unexhausted claims when the defendants' actions "estop[] the State from asserting the exhaustion defense," Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004), or render the administrative remedies "unavailable," Abney v. New York Dep't of Corr. Servs., 380 F.3d 663, 669 (2d. Cir. 2004), or in other cases where "special circumstances" justify the inmate's failure to exhaust his administrative remedies, Giano, 380 F.3d at 676. Accordingly, other district courts have held that "an inmate's technical failure to exhaust administrative remedies before

commencing [an] action may be excused where officials prevented him from utilizing a grievance procedure." Arnold v. Goetz, 245 F. Supp. 2d 527, 537 (S.D.N.Y. 2003). "[W]here a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the [prisoner], and thus the [PLRA] does not preclude the prisoner from suing in federal court." Thomas v. N.Y. State Dept. of Corr. Servs., Civ. No. 00-7163, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002).

In this case, Enigwe alleges that he asked defendant Jose Mieles—the prison employee to whom he had access at MDC Brooklyn—for the appropriate grievance form several times without success. Written requests to Mieles allegedly went unanswered, while verbal requests were allegedly dismissed with a statement that Mieles was busy with pressing matters. Enigwe alleges that his inability to obtain the form by which he could submit a complaint precluded him from pursuing further administrative remedies because those subsequent procedures consist only of reviews of the disposition of an initial complaint. The defendants challenge Enigwe's claim that he attempted to pursue his administrative remedies and have provided an affidavit from Mieles stating that he has no recollection of Enigwe and denying that Enigwe ever complained about smoking in the MDC or requested any administrative remedy forms. (Mieles Aff. ¶ 5.) The defendants also argue that even if Enigwe's allegations were true, they would not excuse exhaustion because Enigwe could have pursued other options, such as requesting the form from other prison employees or writing a letter to the Warden. Enigwe contends that Mieles was the exclusive source for the administrative form required to initiate the administrative procedures, and that writing a letter to the Warden would have been futile because the administrative scheme

does not recognize such a letter as a valid substitute for the required form. In addition, Enigwe

has supplied the Court with a letter showing that he evidently filed some kind of "Administrative

Tort Claim" with the Bureau of Prisons on February 3, 2003, relating to injuries suffered during

his confinement at the MDC Brooklyn. (<u>See</u> Letter to Ifedoo Noble Enigwe from Henry J.

Sadowski, Regional Counsel to the Bureau of Prisons, February 21, 2003.) That claim was

rejected because it alleged constitutional violations "which are not actionable under the Federal

Tort Claims Act."[2] (<u>Id.</u>)

At this stage of the proceedings, a genuine question of fact exists with respect to whether

Enigwe should be excused from exhausting his administrative remedies with regard to claims

relating to his confinement at MDC Brooklyn. The only evidence before the Court relating to

exhaustion are the statements of Enigwe and Mieles, both of whom are parties to the case, and

the aforementioned letter regarding Enigwe's administrative tort claim. Therefore, the Court

declines to grant summary judgment on the grounds of exhaustion on claims relating to the MDC

Brooklyn, and instead directs that a hearing be held in this matter on October 26, 2006 at 11:30

am in Courtroom 10D.

Enigwe has not, however, presented any reason why he should be excused from having to

exhaust his administrative remedies with regard to his confinement at FCI Elkton. Therefore, the

Court concludes that these claims must be dismissed, without prejudice to being reasserted by

Enigwe after he has exhausted his administrative remedies. Furthermore, Enigwe has failed to

---

[2] Although it is not clear whether Enigwe's "Administrative Tort Claim" would satisfy the
PLRA's exhaustion requirement, the Court notes that it does suggest that the defendants are
mistaken when they assert that this lawsuit represents "the first time that [Enigwe] has ever
complained in any fashion, formally or informally, about ETS or indeed about any of the
conditions of his confinement." (Def.'s Mem. 7.)

name proper respondents for his allegations relating to FCI Elkton. Defendants Zenk and Mieles work at the MDC Brooklyn and may be held responsible only for Enigwe's claims relating to that facility. Although Hawk-Sawyer did oversee FCI Elkton, the Court has determined that the complaint must be dismissed as to her because it fails to allege that she was personally involved in any of the alleged violations. Therefore, an independent reason to dismiss the allegations relating to FCI Elkton is Enigwe's failure to name a proper respondent. Should Enigwe reassert these claims upon exhausting his administrative remedies, he should take care to name defendants whom he can show were personally involved in the alleged deprivations and who are proper respondents to his action. Moreover, Enigwe should take care to file his claim in the proper forum. The complaint in this action asserted that the Eastern District of New York was the proper forum because defendants Zenk and Mieles work at the MDC Brooklyn and because defendant Hawk-Sawyer does business in New York. Am. Compl. at ¶ 4. However, any new defendants who were personally involved in the alleged deprivations at FCI Elkton may not have sufficient contacts with the current forum and should more properly be proceeded against in the federal district court in their state of residence or in Ohio, where the alleged deprivations took place.

IV.     Physical Injury Requirement

The defendants argue that Enigwe's complaint should be dismissed because he has alleged only mental and emotional injuries. In addition, the defendants argue that Enigwe's medical records from the relevant period conclusively establish that Enigwe has suffered no physical injury sufficient to allow him to proceed.[3]

---

[3] The Court notes that it had some difficulty evaluating the defendants' arguments regarding Enigwe's medical records because, although the defendants use page numbers in their citations

According to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In this case, Enigwe alleges that his exposure to ETS has created a serious risk of future harm to his health, which the Supreme Court acknowledged to be a valid basis for a claim under the Eighth Amendment in Helling v. McKinney, 509 U.S. 25, 35 (1993). Defendants suggest that section 1997e(e), which was enacted in 1996, see PLRA, Pub. L. No. 104-134, 110 Stat. 1321 (1996), superceded Helling, which was decided three years earlier. However, a serious risk of future injury of the type at issue in Helling is plainly not a "mental or emotional injury" that would be restricted by section 1997e(e). It is a serious risk of a future *physical* injury, such as cancer. Moreover, the Second Circuit has continued to apply Helling following section 1997e(e)'s enactment. See Smith v. Carpenter, 316 F.3d 178 (2d Cir. 2003) ("[Plaintiff] correctly argues that an Eighth Amendment claim may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm and that actual physical injury is not necessary in order to demonstrate an Eighth Amendment violation."); Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) (allowing Helling claim to proceed, after passage of PLRA); see also Pack v. Artuz, 348 F. Supp. 2d 63, 74 n.12 (S.D.N.Y. 2004) (discussing damages for Eighth Amendment violation, relevance of physical injury, and PLRA). The Court therefore concludes that the PLRA's

---

to the records, the pages of the exhibit are not numbered. (See generally, Ex. 2, Def.'s Statement of Material Facts (May 30, 2003).) In addition, although the defendants claim that an examination report from November 19, 2002 could be found at "Exh. 2, at 1," the first page of Exhibit 2 shows a lab report from February 14, 2003. A report dated November 19, 2002 can instead be found in the *last* pages of Exhibit 2. The Court speculates that the copy of Exhibit 2 submitted to the Court was bound in the reverse of the intended order, and notes for the defendants' benefit that it has often found page numbers to be helpful in avoiding similar errors.

physical injury requirement does not preclude Enigwe's Eighth Amendment claim.

Section 1997e may nevertheless restrict Enigwe's ability to recover damages for emotional distress. In <u>Thompson v. Carter</u>, 284 F.3d 411, 417 (2d Cir. 2002), the Second Circuit held that "Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." Thus, Enigwe could not recover damages for his alleged emotional distress unless he also established physical injury. Indeed, if damages for his alleged emotional distress were the only relief Enigwe sought, the Court would be compelled to dismiss his complaint, as the defendants urge. <u>Cf.</u> <u>Thompson</u>, 284 F.3d at 419 (noting district court could have dismissed complaint if plaintiff sought "damages solely for an emotional injury without any claim of physical injury."). However, Enigwe appears to seek additional relief, such as nominal and punitive damages.

Moreover, Enigwe has alleged that he suffered physical injury. Specifically, Enigwe has alleged that his exposure to ETS has caused him to suffer from physical symptoms including dizziness, uncontrollable coughing, lack of appetite, runny eyes and high blood pressure. (Complaint ¶ 12.) Enigwe's medical records confirm that he did complain of high blood pressure, exhibited a poor diet, and suffered from fainting spells during the relevant period, although he apparently attributed those spells to hypoglycemia at the time. The Court therefore must conclude that there is a disputed issue of fact regarding the physical injuries Enigwe may have suffered. If Enigwe is able to establish at trial that he has suffered current physical injuries, he will be allowed to pursue his allegations of emotional distress. 42 U.S.C. § 1997e(e).

V.    Serious Risk of Future Harm

As noted above, a prisoner may state a cause of action under the Eighth Amendment for

exposure to levels of ETS which pose an unreasonable risk of serious damage to his future health

where such exposure was the result of deliberate indifference by prison officials.  Helling, 509

U.S. at 35.  In Helling, the Court articulated a two part inquiry applicable to such claims,

consisting of objective and subjective components.  The Court held that the plaintiff in Helling

would establish the objective factor by showing that he was currently being exposed to

unreasonably dangerous levels of ETS, and that "the risk . . . [is] so grave that it violates

contemporary standards of decency to expose *anyone* unwillingly to such a risk."  Id. at 35–36

(emphasis in original).  The plaintiff would establish the subjective component by showing that

the defendants acted with "deliberate indifference."  Id. at 37.  See also Estelle v. Gamble, 429

U.S. 97 (1976).[4]

The defendants argue that Enigwe cannot establish a claim under Helling because the

Bureau of Prison's smoking policy, currently codified at 28 C.F.R. §§ 551.160–.162 (2004),

"prohibits smoking in the common areas and in all housing units at all institutions, and it

accommodates non-smoking preferences in cell selection."  (Def.'s Mem. at 13.)  The defendants

contend that the Supreme Court in Helling held that a less restrictive policy "minimize[s] the risk

to McKinney and make[s] it impossible for him to prove that he will be exposed to unreasonable

risk with respect to his future health.  (Def.'s Mem. at 14 (quoting Helling, 509 U.S. at 36)

---

[4] Under Estelle, plaintiffs bringing claims that they received inadequate medical care while in
prison are required to show a culpable state of mind beyond inadvertence or negligence on the
part of doctors or other prison officials.  Estelle, 429 U.S. at 105–06.  This requirement was later
extended to all claims based on conditions of confinement raised under the Eighth Amendment.
Wilson v. Seiter, 501 U.S. 294 (1991).

(alterations in Def.'s Mem.).)  The defendants have misunderstood <u>Helling</u>'s discussion of the no smoking policy.

In <u>Helling</u>, the Director of the state prison system adopted a formal smoking policy after the plaintiff initiated his suit seeking injunctive relief.[5]  The Supreme Court noted that "[i]t is possible that the new policy will be administered in a way that will minimize the risk to McKinney and make it impossible for him to prove that he will be exposed to unreasonable risk with respect to his future health or that he is now entitled to an injunction." <u>Helling</u>, 509 U.S. at 36.  Thus, it was not the mere existence of a policy that might have mattered in <u>Helling</u>, but its administration.  Enigwe has alleged that the smoking policies at the MDC Brooklyn were disregarded and unenforced by the defendants.  (Complaint ¶ 7, 8, 9, 13.)  The existence of the Bureau of Prisons policy does not undermine those allegations or the allegations that Enigwe was in fact exposed to unreasonable levels of ETS.  Indeed, insofar as the policy states that Enigwe's exposure to ETS *should* have been limited, it is consistent with Enigwe's claims.

Moreover, the Court disagrees with the defendants' interpretation of the Bureau of Prisons policy.  The defendants claim—without citation—that the policy "prohibits smoking in the common areas and in all housing units at all institutions, and it accommodates non-smoking preferences in cell selection."  (Def.'s Mem. at 13.)  However, the regulations in effect during 2002 and 2003 appear to be significantly less categorical than that.  The regulations first state that "[a]ll areas of Bureau of Prisons facilities and vehicles" shall be no-smoking areas, unless specifically designated otherwise by the Warden. 28 C.F.R. § 551.162 (1994); <u>see</u> 59 Fed. Reg.

---

[5] Although the plaintiff in <u>Helling</u> initially sought both damages and injunctive relief, the Supreme Court was presented only with issues regarding injunctive relief because the Court of Appeals had found the defendants to be immune from suit for damages and the plaintiff had not appealed that determination. <u>See</u> <u>Helling</u> 509 U.S. at 28–29.

34742, 34742–43 (July 6, 1994).  The regulations then require each Warden to designate outdoor smoking areas, and allow the Warden to "designate a limited number of indoor smoking areas where the needs of effective operations so require."  28 C.F.R. § 551.163(b) (1994).  Finally, the regulations provide that nonsmoking inmates should be housed in nonsmoking quarters "[t]o the maximum extent practicable."  Id. at § 551.163(c) (1994).  Thus, under the regulations cited by the defendants, a Warden has discretion to permit smoking inside a facility, including in common areas and in housing units, so long as the Warden deem such permission to be required by "the needs of effective operations."  Id. at § 551.163(b) (1994).  Whether the Warden of MDC Brooklyn exercised that discretion prudently or with deliberate indifference to Enigwe's health would appear to be an issue for trial.

The Court therefore concludes that, if exhaustion may be excused, Enigwe could pursue his claim that the defendants violated his Eighth Amendment rights by acting with deliberate indifference to his exposure to ETS and creating an unreasonable risk of future harm to his health.  Given the brevity of Enigwe's confinement at MDC Brooklyn, the Court has grave doubts about his ability to show that he was exposed to an unreasonable level of ETS or the damages to which he would be entitled should he prevail.  Nevertheless, these doubts are not sufficient to award summary judgment to the defendants.

CONCLUSION

For the aforementioned reasons, the defendants' motion for summary judgment is granted with respect to claims relating to Enigwe's confinement at FCI Elkton and with respect to claims against the defendants in their official capacities.  In addition, the complaint is dismissed as to defendant Hawk-Sawyer.  The Court will hold a hearing regarding Enigwe's

effort to exhaust his administrative remedies at 11:30 am on October 26, 2006 in courtroom 10D.

Counsel for the defendants are directed to prepare a writ to have Enigwe produced in court on

October 26th and are directed to submit this writ to the Court no later than October 12, 2006.

SO ORDERED

Dated: Brooklyn, New York
September 15, 2006

Carol Bagley Amon
United States District Judge