```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
Ifedoo Noble ENIGWE,                                      :    NOT FOR PUBLICATION
                                                          :
                Plaintiff,                                :    MEMORANDUM AND ORDER
v.                                                        :    03-CV-854 (CBA)
                                                          :
Michael ZENK, Warden of MDC,                              :
individually and as an official of                        :
the Federal Bureau of Prisons;                            :
Kathleen HAWK-SAWYER, (former)                            :
Director, Federal Bureau of Prisons,                      :
individually and as an official;                          :
Jose MIELES, Counselor at MDC,                            :
individually and as an official of                        :
the Federal Bureau of Prisons,                            :
                                                          :
                Defendants.                               :
----------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE.
```

Pro se plaintiff Ifedoo Noble Enigwe alleges that he was exposed to dangerous levels of environmental tobacco smoke ("ETS"), in violation of the Eighth Amendment, during his 59-day detention at the Metropolitan Detention Center, in Brooklyn, New York ("MDC Brooklyn"), and that he continues to be exposed to unreasonable levels of ETS at the Federal Correctional Institution at Elkton, in Lisbon, Ohio ("FCI Elkton"), where he is currently incarcerated. In an order dated September 15, 2006, the Court partially granted and partially denied the defendants' motion for summary judgment and dismissed certain of Enigwe's claims. Enigwe has filed a "Rule 59(e) Statement" and a supporting memorandum seeking reconsideration of that order, and the remaining defendants have again moved for summary judgment. For the reasons stated below, Enigwe's motion for reconsideration is denied and the defendants' motion for summary judgment is granted.

**BACKGROUND**

Enigwe was detained at MDC Brooklyn for approximately two months between November 18, 2002, and January 16, 2003. In his amended complaint, filed on June 19, 2003, Enigwe alleges that he was exposed to harmful amounts of ETS during that time. Specifically, he contends that inmates routinely smoked inside the unit despite the prohibition on doing so, that his cell-mate and others chain-smoked within his cell, and that cigarette smoke constantly entered his cell through the heating vents. (Am. Compl. at ¶¶ 9-11.) In his complaint, Enigwe contends that he currently suffers from dizziness, uncontrollable coughing, frequent lack of appetite, runny eyes, and high blood pressure as a result of the exposure. (Id. at ¶ 12.) He has also allegedly suffered from emotional distress in the form of daily anxiety as a result of the exposure. (Id.) Finally, Enigwe alleges that he continues to be exposed to ETS in his present location in FCI Elkton, as inmates smoke openly in the living quarters in violation of the facility's rules. (Id. at ¶13.)

On June 10, 2004, the defendants moved for summary judgment, and on September 15, 2006, this Court issued an order granting in part and denying in part the defendants' motion. See Memorandum & Order, Enigwe v. Zenk, No. 03-CV-854, 2006 WL 2654985 (E.D.N.Y. Sept. 15, 2006) [hereinafter "September 15, 2006 order"]. The motion was granted with respect to Enigwe's claims against the defendants in their official capacities and with respect to his claims relating to FCI Elkton, but denied with respect to his claims regarding MDC Brooklyn.[1] Thus,

---

[1] The Court also declined to grant summary judgment with respect to the defendants' exhaustion defense and ordered a hearing to determine whether Enigwe should be excused from failing to exhaust his remedies pursuant to the Prison Litigation Reform Act ("PLRA"). However, after taking Enigwe's deposition on November 17, 2006, the defendants waived this defense and requested to file a summary judgment motion on alternate grounds. The Court

only Enigwe's Eighth Amendment claims against defendants Zenk and Mieles in their individual capacities remain. On September 28, 2006, Enigwe filed a motion to amend this Court's September 15, 2006 order, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. On December 12, 2006, defendants filed the instant motion, their second motion for summary judgment. Enigwe filed a memorandum supporting his request to amend the Court's order and opposing defendants' motion for summary judgment on January 12, 2007.

## DISCUSSION

### I. Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve disputed issues of fact but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999). The moving party bears the burden of establishing the absence of a genuine issue of material fact for trial. Baisch v. Gallina, 346 F.3d 366, 371 (2d Cir. 2003).

The Court is required to view the evidence in the light most favorable to the nonmoving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and must construe the pro se plaintiff's claims liberally in deciding the motion for summary judgment, see Sawyer v.

---

granted the defendants permission to move for summary judgment during a status conference held on November 30, 2006. As Engiwe's failure to address his administrative remedies is no longer a basis for defendants' summary judgment motion, the Court need not revisit the issue.

3

American Fed'n of Gov't Employees, AFL-CIO, 180 F.3d 31, 36 (2d Cir. 1999) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Nevertheless, the nonmoving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

Under the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, summary judgment may be granted in a pro se case when (1) the plaintiff has received adequate notice that failure to respond may result in dismissal of the case, and (2) the court determines that the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law. Civ. R. 56.2; Fed. R. Civ. P. 56(e); see Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). In this case, Enigwe received notice informing him of the nature and consequences of summary judgment, as required by Vital, 168 F.3d at 620-21. Although Enigwe did not file a Rule 56.1 statement, he did submit a memorandum which provided information challenging some of the defendants' assertions.

## II. Enigwe's Eighth Amendment Claim

Enigwe asserts that his exposure to ETS while at MDC Brooklyn constituted cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment's

prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 104 (1976) (citations omitted). The Supreme Court has held that the deliberate indifference of prison officials to a prisoner's serious medical needs constitutes an Eighth Amendment violation. Id. at 103-104; Wilson v. Seiter, 501 U.S. 294 (1991). In the context of an ETS claim, a prisoner can show deliberate indifference to medical needs by establishing that he has suffered adverse medical consequences due to exposure to ETS and that the defendants were deliberately indifferent to this physical harm. Helling v. McKinney, 509 U.S. 25, 33-35 (1993). However, a prisoner need not establish actual present harm if he can establish that the defendants, with deliberate indifference, exposed him to unreasonably high levels of ETS, thereby creating an unreasonable risk of serious damage to his future health. Id. at 35.

In this case, Enigwe asserts that as a result of exposure to ETS, he suffered actual adverse medical consequences, to which the defendants were deliberately indifferent. He also asserts that he was exposed to unreasonably high levels of ETS, thereby creating an unreasonable risk of serious damage to his future health. He claims that defendants are responsible in their personal capacities pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

### A. Enigwe has not shown that he had a serious medical need

In order to sustain a constitutional claim for present injury caused by ETS exposure, Enigwe must present evidence tending to support his allegation that ETS caused him to suffer serious adverse health consequences and that prison officials were deliberately indifferent to

those needs. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994); Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999).

In this case, Enigwe alleges that he "suffers from constant feeling of dizziness, coughing uncontrollably, frequent lack of appetite, consistent runny eyes, and maintaining a very high blood pressure." (Am. Compl. at ¶ 12.) He also alleges that he suffers from "anxiety." (Id.) However, Enigwe has presented no evidence supporting these allegations, or supporting his contention that they were "sufficiently serious" to constitute an Eighth Amendment claim for present injury.[2] Enigwe has never sought medical treatment for dizziness. (Enigwe Dep. at 24.) He has also never sought medical treatment for his coughing, except for taking over-the-counter medications available in the prison commissary, nor for the "watery eyes", which occur when he coughs. (Enigwe Dep. at 20-21, 158-59, 22.) Although Enigwe claims that a nurse at FCI Elkton told him he was suffering from "anxiety or something", he was never seen, nor did he ask to be seen, by any psychologists while at MDC Brooklyn. (Enigwe Dep. at 36-40; Def. 56.1 Statement at ¶ 25; Medical Records, attached as Exh. 2 to Amanat's Decl., at 0129, 0246-0279.) Upon his departure from MDC Brooklyn, Enigwe completed a Medical History Report in which he advised Bureau of Prisons ("BOP") medical personnel that he had never had, and did not then have, dizziness, chronic cough, high blood pressure, or nervous trouble of any sort. (Enigwe Dep. at 153-55.) Furthermore, three days after his arrival at FCI Elkton, Enigwe was given an

---

[2] Enigwe argues that the Court may not revisit the issue of whether he has serious physical injuries, which was addressed in the September 15, 2006 order. However, in that order, the Court merely held that Enigwe had stated a claim for damages under 42 U.S.C. § 1997e(e) because he had alleged physical injury in his complaint. The Court did not address whether Enigwe had presented any evidence to support these allegations, nor whether the allegations of physical harm were sufficiently serious to constitute an Eighth Amendment deliberate indifference claim.

intake screening by the Psychology Department at that facility, where a psychologist stated that Enigwe "showed no signs of any significant depression or anxiety." (See Def. 56.1 Statement at ¶ 27; Medical records, "Psychological Services Intake Screening Summary," attached as Exh. 2 to Amanat Decl., at 0283.) Significantly, Enigwe's medical records do not demonstrate that a physician ever suggested that he had a health problem that required removal from areas exposed to ETS. See Henderson, 196 F.3d at 842 ("Conspicuously absent from [plaintiff's] complaint is any allegation that a physician ever recommended or ordered that he be removed from the allegedly smoky tier in which he was housed and placed in a non-smoking environment.") Furthermore, he has not alleged that he suffers from a medical condition, such as asthma, that was exacerbated by exposure to ETS. Thus, Enigwe has not demonstrated that he suffered medical conditions that were sufficiently serious to constitute an Eighth Amendment claim.

Finally, even if Enigwe's alleged ailments were sufficiently serious to constitute an Eighth Amendment claim, he has not shown that prison officials were deliberately indifferent to his medical needs. The deliberate indifference standard requires that the defendants knowingly disregarded Enigwe's serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference exists if an official has actual knowledge of and disregards an excessive risk to inmate health or safety . . . ."); Hathaway, 37 F.3d at 66. As discussed above, Enigwe never informed the defendants that he was suffering from serious health problems due to ETS exposure, nor did he ever request any medical treatment for any health problems during his 59 days at MDC Brooklyn. Thus, the defendants did not have actual knowledge of and did not disregard an excessive risk to Enigwe's health or safety.

**B.	Enigwe has not shown that he was exposed to unreasonable levels of ETS**

Enigwe also asserts that, even if he has not suffered any actual physical injury, he was exposed to unreasonably high levels of ETS creating "an unreasonable risk of serious damage to his future health." Helling 509 U.S. at 35. However, Enigwe has failed to present any evidence tending to support his claims; his argument rests on mere allegations and conclusory statements, which are insufficient to defeat a motion for summary judgment. Fed. R. Civ. P. 56(e).

Enigwe alleges in his complaint that "almost 98% of the residents" in his unit smoked and that "they smoked inside the unit, and in individual cells," that "his cell-mate and his friends chain-smoked in Plaintiff's cell day and night," and that he was subjected to ETS "all day, all night." (Am. Compl. at ¶¶ 11, 12.) However, Enigwe's deposition testimony flatly contradicts these allegations, and he has presented no other evidence to support them. For example, Enigwe admitted in his deposition that he never saw any inmates smoking inside the unit or in individual cells and that he merely "surmised" that 98% of the inmates smoked. (Enigwe Dep. at 78, 126-30.) Contradicting his allegation that his cell-mate "chain-smoked," Enigwe admitted that he never saw his cell-mate, nor anyone else, smoke inside his cell. (Enigwe Dep. at 103-05, 134.) Indeed, during his deposition, the only ETS to which Enigwe claimed to have been exposed was that which traveled through the ventilation system from unauthorized smoking by other inmates in their cells. However, Enigwe admitted that he could not recall whether he ever actually saw smoke coming from any vents. (Enigwe Dep. at 52-53, 103-04, 106, 128, 134.)

In contrast to Enigwe's claims, the defendants assert that Enigwe was not exposed to ETS through the ventilation system, as MDC Brooklyn had a non-smoking policy in place inside all buildings during the period of Enigwe's confinement. (MDC Brooklyn Handbook at 13.) In

particular, MDC Brooklyn's smoking policy stated that "Smoking is prohibited in all building at this institution. Smoking is only permitted on the unit recreational areas across from the housing unit doors. Any inmate who does not adhere to this will be subject to disciplinary action." (Id.) Indeed, Enigwe admitted in his deposition that he only saw people smoking on the outdoor recreation deck, where smoking was permitted. (Def. 56.1 Statement at ¶ 36; Enigwe Dep. at 49, 78, 105-06, 126-27, 128.) Enigwe testified that although he did not see anyone smoking inside the prison, where it was prohibited, he could "feel" that he was exposed to smoke. (Enigwe Dep. at 49-50.) However, Enigwe presents no other evidence, such as affidavits from other inmates, supporting his allegations of unauthorized smoking at MDC Brooklyn. Accordingly, because Enigwe has presented no evidence supporting his allegations of smoking within MDC Brooklyn, his Eighth Amendment claims fail. See, e.g., Scott v. District of Columbia, 139 F.3d 940, 942-43 (D.C. Cir. 1998) (dismissing claims where inmates alleged smoking in housing units but failed to present any evidence in support of claims); Campbell v. Dzurenda, No. 04-CV-1111, 2006 WL 691996, slip op. at *5 (D. Conn. Mar. 17, 2006) (granting defendant summary judgment for the time period where plaintiff provided no evidence to support his allegations that correctional officers smoking in unauthorized areas); Lacroix v. Williams, No. 97-CV-0790, 2000 WL 1375737, slip op. at *3 (W.D.N.Y. Sept. 21, 2000) (granting defendant summary judgment where plaintiff provided no evidence to support the statement that he was housed in poorly ventilated 22-man dormitory with 21 inmates who smoked).

Furthermore, even crediting Enigwe's claims that he was exposed to ETS through the ventilation system, such allegations are not sufficient to establish an unreasonable level of ETS exposure. Inmates do not have a constitutional right to be free of any or all levels of exposure to

ETS, but only unreasonable levels of exposure. See Johnson v. Goord, No. 01-CV-9587, 2005 WL 2811776, slip op. at *7 (S.D.N.Y. Oct. 27, 2005) ("The Supreme Court made clear in Helling that inmates do not have an unqualified constitutional right to a smoke-free environment, but only a right to be free of involuntary exposure to a level of ETS which unreasonably endangers their future health . . . .") (internal quotations omitted). In Helling, the plaintiff's cell-mate was a chain-smoker who smoked five packs of cigarettes a day. Although Enigwe need not establish a level of ETS exposure equivalent to that of Helling in order to survive summary judgment, Warren v. Keane, 196 F.3d 330, 333 (2d Cir. 1999), it is questionable whether an ETS claim can succeed where the plaintiff does not share a cell with a smoker. See Helling, 509 U.S. at 35 ("Plainly relevant" to the plaintiff's ability to show continued exposure to unreasonably high levels of ETS is "the fact that [he] . . . is no longer the cell-mate of a five-pack-a-day smoker."); see also Johnson at *5 (granting defendants' renewed motion for summary judgment and stating that "here, unlike in Helling, 509 U.S. at 28, where the plaintiff claimed to have been forced to share a cell with another inmate who smoked five packs a day, plaintiffs do not allege that they were forced to share cells with smokers"); Zaire v. Artuz, No. 99-CV-9817, 2003 WL 230868, slip op. at 5 (S.D.N.Y. Feb. 3, 2003) (granting summary judgment to defendants where plaintiff was only exposed to ETS in common areas). In addition, Enigwe's alleged exposure to ETS through the ventilation system lasted, at most, for two months. Accordingly, the exposure was not sufficient to demonstrate a "serious risk of harm to his future health."[3] See, e.g., Gill v.

---

[3] In its September 15 order, the Court expressed doubt as to whether exposure to ETS during Enigwe's short period of confinement at MDC Brooklyn could rise to the level of an Eighth Amendment violation. In response, Enigwe argues that he was exposed to ETS in all prisons in which he was incarcerated. However, the Court dismissed Enigwe's claims regarding exposure to ETS at FCI Elkton for failure to exhaust administrative remedies. Furthermore, the

10

Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (affirming a district court's finding that three brief encounters with second-hand smoke were insufficient to state a constitutional claim). Accordingly, even crediting Enigwe's allegations that he was exposed to unseen ETS through the ventilation system for a period of two months, such exposure does not rise to the level of an Eighth Amendment violation.

Furthermore, even if Enigwe had been exposed to an unreasonably high level of ETS, he has failed to show that any prison official was deliberately indifferent to the risk to his future health. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Whether a prison has a non-smoking policy bears heavily on the question of deliberate indifference. Helling, 509 U.S. at 36. As stated above, MDC Brooklyn's policy prohibited smoking in all buildings, and permitted it only on the outdoor recreational areas. Enigwe alleges that the non-smoking policy was not enforced, as he claims he was exposed to ETS in his cell through the ventilation system. However, imperfect enforcement of the policy alone may not support a finding of deliberate indifference. See e.g., Scott, 139 F.3d at 944.

Furthermore, Enigwe does not seem to assert that he informed prison officials that the non-smoking policy was being violated. Enigwe claims that he complained to defendant Mieles regarding his ETS exposure and that he orally requested to be moved to a non-smoking unit, but

---

Court will not consider Enigwe's claims regarding ETS exposure at FCI Fairton and FCI Allenwood, as Enigwe did not raise those claims in his complaint.

that this request was denied. (Am. Compl. at ¶ 9, 10.) However, Enigwe does not claim that he specifically told Mieles, or any other prison official, that there was smoking in his cell or in other areas of the housing unit where smoking was forbidden, as opposed to on the outdoor recreation deck, where smoking was allowed. (Enigwe Dep. at 80-82, 108, 110-112.) Thus, at most, prison officials were aware that Enigwe wished to be transferred to a unit where there was no smoking allowed anywhere within the unit, including the recreation deck. There is no evidence that prison officials were aware that Enigwe was being exposed to unreasonably high levels of ETS. Accordingly, Enigwe cannot show that the prison officials were deliberately indifferent to unreasonably high levels of ETS exposure.

Enigwe has not presented evidence sufficient to demonstrate that he suffered actual adverse medical consequences from ETS exposure to which the defendants were deliberately indifferent. Enigwe also has not offered any evidence showing that he was exposed to unreasonably high levels of ETS, thereby creating an unreasonable risk of damage to his future health. Therefore, this Court grants the defendants' summary judgment motion and dismisses the Eight Amendment claim against defendants Zenk and Mieles.

### III. Enigwe's Rule 59(e) Statement/Request for Reconsideration

On September 28, 2006, Enigwe filed a "Rule 59(e) Statement" in which he asserted that this Court should not have granted summary judgment with regard to his claims against the defendants in their official capacities. Enigwe filed a supporting memorandum, and an opposition to defendants' motion for summary judgment, on January 12, 2007. Enigwe filed his motion under Rule 59(e) of the Federal Rules of Civil Procedure, which governs requests to amend a judgment. However, no judgment has been issued in this case. Accordingly, the Court

construes Enigwe "Rule 59(e) statement" as a request for reconsideration, under Local Rule 6.3, of the Court's September 15, 2006 order.

The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. See Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999) (citing McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983)). "A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." In re Worldcom, Inc. Sec. Litig., 308 F. Supp. 2d 214, 224 (S.D.N.Y. 2004); see also In Re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003). Reconsideration also may be granted to "correct a clear error or prevent manifest injustice." Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F.3d 1279, 1287 (2d Cir.1994); Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983).

To preserve scarce judicial resources and to avoid piecemeal litigation, a motion for reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dellefave v. Access Temps., Inc., No. 99-CV-6098, 2001 WL 28677, slip op. at *1 (S.D.N.Y. Mar. 22, 2001); see also Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir.1995) (stating that reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided"); In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996) (stating that a Rule 6.3 motion is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved"). In addition, "a party in its motion for reargument may not advance new facts, issues or arguments not previously presented to the court." O'Brien v. Bd. of Educ. of Deer Park

Union Free Sch. Dist., 127 F. Supp. 2d 342, 345 (E.D.N.Y. 2001).

Enigwe has not demonstrated that the Court overlooked factual matters or precedent in its September 15, 2006 order granting defendants' summary judgment motion with respect to Enigwe's confinement at FCI Elkton and with respect to claims against defendants in their official capacities. Similarly, Enigwe has failed to demonstrate that reconsideration of the Court's dismissal of claims against defendant Kathleen Hawk-Sawyer is appropriate. Accordingly, the Court declines to reconsider these issues.

### A. Enigwe's FTCA claim

Enigwe also challenges this Court's decision dismissing his claim under the Federal Tort Claims Act ("FTCA"). In its September 15, 2006 order, the Court noted that although Enigwe could not maintain suit against defendants in their official capacities, he had asked the Court to substitute the United States as a defendant. September 15, 2006 order, slip op. at *4. In that order, the Court found that Enigwe had alluded to a claim under the Federal Tort Claims Act ("FTCA") in his reply brief, but he did not assert that claim in his complaint. Id. at *4, n.1 Enigwe argues in his "Rule 59(e) Statement" that he had, in fact, asserted a valid FTCA claim of negligence against the United States. (Pl. Mem. Opp. Summ. J. 5-7.) A review of his complaint reveals two passing references to an "intentional and common law tort" as part of allegations of Eight Amendment violations.[4] (Am. Compl. at ¶¶ 1, 15.) Although it is not clear that Enigwe has properly alleged an FTCA claim, this Court liberally construes Enigwe's pro se complaint, see Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991), and reconsiders whether the United

---

[4] In his reply brief regarding the motion for reconsideration, Enigwe cites a tort claim form he filed with the Bureau of Prisons to support his contention that he has a claim against the defendants in their official capacities. (Tort Claim Form, attached as Exh. to Pl. Reply Br.)

14

States is immune from suit under the FTCA.

As the Court explained in its September 15, 2006 order, the United States "is immune from suit save as it consents to be sued." United States v. Testan, 424, U.S. 392, 399 (1976) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). The FTCA, 28 U.S.C. §§ 1346(b), 2671, et seq., grants a limited waiver of sovereign immunity. See Myers v. United States, 17 F.3d 890 (6th Cir. 1994). Sovereign immunity is not waived under the FTCA, however, where the alleged tortfeasor was performing a discretionary function. See 28 U.S.C. § 2680.[5] Thus, if an alleged governmental act falls within the discretionary function exception, the Court lacks subject matter jurisdiction and the claim must be dismissed. See Fazi v. United States, 935 F.2d 535, 539 (2d Cir. 1991); Rich v. United States, 119 F.3d 447, 450 (6th Cir. 1997) (citing Freyers v. United States, 749 F.2d 1222, 1225 (6th Cir. 1984), cert. denied, 471 U.S. 1125 (1985)), cert. denied, 523 U.S. 1047 (1998).

In order to determine whether the discretionary function exception applies, the Court must first determine whether the challenged governmental action is the product of "judgment or choice." See United States v. Gaubert, 499 U.S. 315 (1991); Berkovitz v. United States, 486 U.S. 531, 536-537 (1988). That is, the Court must determine whether a statute, regulation, or policy mandates a specific course of action. If such a mandate exists, the discretionary function exception does not apply and the Court may consider the FTCA claim. See Berkovitz, 486 U.S.

---

[5] The statute explicitly provides that the government is not subject to tort liability for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion be abused." 28 U.S.C. § 2680(a).

at 536-537. If the governmental action is the product of judgment or choice, the discretionary function exception applies unless the plaintiff can show that the judgment is not of the kind that the exception was designed to shield. Gaubert, 499 U.S. at 323. That is, the exception shields only those decisions based on "considerations of public policy," since the purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. (quoting Berkovitz, 486 U.S. at 537).

Even if Enigwe's reference to an "intentional and common law tort" in his complaint is construed as alleging a claim under the FTCA, his claim would be barred by the discretionary function exception to the FTCA. Enigwe argues that 18 U.S.C. § 4042(a)(2) prescribes a specific course of action for an employee to follow.[6] However, although prison officials have a statutory duty to protect inmates from harm, in general decisions regarding the best way to safeguard prisoners are discretionary in nature. See, e.g., Castillo v. United States, 166 Fed. Appx. 587 (3d Cir. 2006); Cohen v. United States, 151 F.3d 1338, 1340-45 (11th Cir. 1998); Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 795-97 (8th Cir. 1998); Calderon v. United States, 123 F. 3d 947, 948-51 (7th Cir. 1997); Buchanan v. United States, 915 F.2d 969 (5th Cir. 1990); Taveras v. Hasty, No. 02-CV-1307, 2005 WL 1594330 (E.D.N.Y. July 7, 2005); Scrima v. Hasty, No. 97-CV-8433, 1998 WL 661478, slip op. at *3 (S.D.N.Y. Sept. 24, 1998).

Furthermore, BOP regulations governing smoking during the relevant time period granted the warden discretion. The regulations provided that "all areas of Bureau of Prisons

---

[6] 18 U.S.C. § 4042(a)(2) provides that the Bureau of Prisons shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . . ."

16

facilities and vehicles are no smoking areas unless specifically designated as a smoking area by the Warden," 28 C.F.R. § 551.162 (2002), and that, at administrative institutions such as MDC Brooklyn, "the Warden shall identify outdoor smoking areas and may, but is not required to, designate a limited number of indoor smoking areas where the needs of effective operation so require," 28 C.F.R. § 551.163(b)(2002). Further, the regulations provided that nonsmoking inmates shall be housed in nonsmoking living quarters "to the maximum extent practicable." 28 C.F.R. § 551.163(c)(2002).

This Court has previously held that the BOP regulations on ETS are not categorical, and offer a warden "discretion to permit smoking inside a facility, including in common areas and in housing units. . . ." September 15, 2006, slip op. at *13-14. In addition, other courts have concluded that the discretionary function exception bars suit under the BOP regulations of ETS at issue in this case. The Fifth Circuit has held that the language included in Section 551.163 specifying separate, non-smoking housing was to be provided "to the extent practicable" suggested that decisions under these regulations were "left to the sound discretion of prison administrators." Santos v. U.S., No. 05-60237, slip op. at *2, 2006 WL 1050512 (5th Cir. April 21, 2006) (citing 28 C.F.R. § 551.163 (2002)). The Santos court also noted that claims of non-enforcement of non-smoking rules are also discretionary. Id. See also Ellis v. U.S., No. 05-286, slip op. at *6, 2006 WL 2468867 (W.D. Pa. June 29, 2006) (finding that 28 C.F.R. §§ 551.162, 551.163 give "explicit discretion" to the warden to make decision about inmates' use of tobacco products); Reed v. United States, No. 06-CV-096, 2006 WL 3715779, slip op. at *5-6 (E.D.Ky. Dec. 14, 2006) (holding that the discretionary function exception barred FTCA claim because BOP regulations on ETS leave "the manner and extent to which the warden must fulfill his

17

duties . . . up to the warden"). The Court finds that the Warden had discretion in designating smoking areas.

In addition, Enigwe has failed to show that the judgment at issue is not of the kind that the discretionary function exception was designed to shield. In particular, if a regulation, rule, or statute "allows the employee discretion," a "strong presumption" arises that the employee's acts "are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324. Here, Enigwe has failed to show that the defendants' acts were not meant to be protected by the exception. See Ellis at *6 (concluding that the warden's judgment under BOP regulations on ETS was of the kind Congress intended to shield from liability). Although the Second Circuit has held that certain negligent acts, such as those borne out of laziness, hastiness, or inattentiveness, fall so far outside the range of appropriate judgment that they can no longer be viewed as an exercise of discretion, see Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006), Enigwe has not made sufficient allegations of negligence on the part of the defendants to meet that standard.

Accordingly, even if Enigwe's complaint is broadly construed to state an FTCA claim, he has not shown that the government waived sovereign immunity with respect to such a claim. Thus, Enigwe has not demonstrated "clear error or . . . manifest injustice" in the Court's September 15, 2006 order, and the motion for reconsideration is denied.

## **CONCLUSION**

The defendants' motion for summary judgment is granted and Enigwe's motion for reconsideration is denied. The Clerk of the Court is directed to enter judgment in accordance with this order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 14, 2007

Carol Bagley Amon
United States District Judge